S90A0202. IN THE MATTER OF: INQUIRY CONCERNING A JUDGE NO. 1305.
(388 SE2d 328)

PER CURIAM.

The Judicial Qualifications Commission found that Probate Judge George C. Kennedy, Jr., had violated Canons 1 and 2 of the Code of Judicial Conduct by engaging, directly and indirectly, in the

practice of law in proceedings before the court in which he presided. It found two additional violations of Canons 1, 2, and 3 (C) (1) in that Kennedy had failed to disqualify himself in causes or proceedings in which he or his wife had a substantial interest. It found other violations of Canons 1 and 2 in Kennedy's conduct in regard to the estate of Meta Tompkins.

The commission recommended that Kennedy be removed from office, and Kennedy appealed. We will review only the last of the commission's findings.

1. (a) Kennedy was found guilty of violations of Canons 1 and 2 in that, for his personal financial advantage, he acted to defeat the right of Carrie Lou Hayes to inherit under the will of Meta Tompkins.

(b) When Hayes was seventeen years of age, she began working for Mrs. Tompkins. She continued in her employ for twenty-one years, her latest rate of compensation being $70 weekly. In 1981, Mrs. Tompkins executed a will that awarded to Hayes a life income of $200 per month if Hayes were still in her employ at the time of Mrs. Tompkins' death. With the exception of a few bequests, the remainder of her estate was awarded to Kennedy and his wife, Sue Kennedy. The principal asset of the estate was real property valued at approximately a quarter of a million dollars. Kennedy was familiar with the content of Mrs. Tompkins' will and of her estate.

(c) In April 1983, Mrs. Tompkins was diagnosed as suffering from cancer. When it became apparent in October 1983, that her condition was terminal, she was placed in a nursing home. Hayes continued to work at the Tompkins' home, caring for her animals and doing other tasks. Mrs. Tompkins was admitted to a hospital in December 1983, and died there a few days later.

(d) Sixteen days before Mrs. Tompkins' death, Kennedy, purporting to act under a power of attorney from Mrs. Tompkins, terminated Hayes' employment.[1] He told Hayes that Mrs. Tompkins was

---

[1] Kennedy contends that he was following the express instructions of Mrs. Tompkins in terminating Hayes' employment. Kennedy testified before the Judicial Qualifications Commission that Claude Turner was with him when he visited Mrs. Tompkins at the nursing home, at her request, shortly before her death. Turner testified as follows:

"Q. Did you happen to overhear anything Meta requested Judge Kennedy to do?
A. Put the dogs down was the only thing I heard her say.
Q. Did you hear anything about the house?
A. Close the house, yes."

Kennedy testified:

Well, now, I think that going over the figures and the amount of money she had took place probably after Claude left; but we discussed about putting the dogs down, she wanted to put the dogs down; close the house; the way I understood it was to let Carrie Lou go. And then after Claude left, we got down and figured up what was what, how much income she had and how much expenses were.

without funds to pay her, although he knew that Mrs. Tompkins had a bank account containing $11,000, and that she owned valuable real property.

(e) Hayes later requested of Kennedy and his wife assistance in finding a place to live. Hayes was told that the estate had no resources that could assist her. The Kennedys, however, said that they would try to help. In September, 1984, Sue Kennedy accompanied Hayes to the office of a lawyer, and explained to her that, because Hayes was not employed by Mrs. Tompkins on the date of her death, Hayes had no share in the estate. Sue Kennedy asked Hayes to sign a document releasing the estate from any claims, in return for which Hayes received $3,000. Hayes testified that, before this incident, she had no knowledge of the content of Mrs. Tompkins' will.

2. (a) Canon 1 of the Code of Judicial Conduct provides:

An independent and honorable judiciary is indispensable to justice in our society. Judges should participate in establishing, maintaining, and enforcing high standards of conduct, and should observe such standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

(b) Canon 2 (A) of the Code of Judicial Conduct provides:

Judges should respect and comply with the law and should conduct themselves at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

3. The Judicial Qualifications Commission determined:

The Commission, after consideration, has concluded that when [Kennedy] terminated the employment of Carrie Lou Hayes on December 7, 1983 because of alleged lack of funds, he knew that Meta Tompkins was on the verge of death and acted to forestall her right to inherit under the Will of Meta Tompkins to his financial advantage and further finds that such conduct constituted a violation of Canons 1 and 2 of the Code of Judicial Conduct.

4. (a) The record contains ample support for the findings of the commission.

(b) It is beyond peradventure that the deception and over-reaching practiced against an untutored woman, who was ignorant in the

law, by a judicial officer of this state was odious conduct, and diametrically the opposite from the commands of the Canons. It is equally clear that Kennedy's conduct has damaged the integrity of the judiciary, and the public confidence in its integrity and impartiality.

5. We approve the findings and adopt the recommendation of the Judicial Qualifications Commission. George C. Kennedy, Jr., is removed from office as probate judge.

*Judge removed. All the Justices concur.*

DECIDED NOVEMBER 9, 1989 —
RECONSIDERATION DENIED DECEMBER 4, 1989.

*Hugh M. Dorsey, Jr.,* for Judicial Qualifications Commission.
*Willis, McKenzie & Long, D. Ray McKenzie,* for Kennedy.